SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Alejandro DUCLAUD GONZALEZ DE CASTILLA, Jose Antonio Duclaud Gonzalez de Castilla, Pablo Velazquez Baranda, Maricruz Lozano Ledzma, Rodrigo Igartua Baranda, Elvira Baranda Garcia, ANA Igartua Baranda de Duclaud, Martha Baranda de Igartua, Anushka Trust, Caribbean Legal Trust, Antares Holdings Investment Ltd., and Banrise Ltd., BVI., Defendants.

No. 01 Civ. 3999(RWS).

United States District Court, S.D. New York.

Nov. 2, 2001.

Securities and Exchange Commission by Mark Kreitman, Kevin O'Rourke, William R. Baker, III, Lawrence A. West, Neil J. Welch, Jr., Jose M. Rodriguez, Washington, DC, for Plaintiff.

Cravath, Swaine & Moore by John E. Beerbower, New York City, for Defendant Alejandro Duclaud Gonzalez de Castilla.

Gleason Koatz & Dyer by John P. Gleason, New York City, for Defendant Jose Antonio Duclaud.

Hogan & Hartson by Ira M. Feinberg, Lyndon M. Tretter, New York City, for Defendants Pablo Velazquez Baranda, Elvira Baranda Garcia, and Maricruz Lozano Ledezma.

Squadron Ellenoff Plesent & Sheinfeld by Ira Lee Sorkin, New York City, for Defendant Rodrigo Igartua Baranda.

Milbank, Tweed, Hadley & McCloy by Andrew E. Tomback, Matthew M. Oliver, Jennifer M. Anglim, New York City, for Non–Party Ignacio Guerrero (Beneficiary of Banrise Ltd. BVI).

## OPINION

SWEET, District Judge.

Two defendants and one non-party witness, for reasons of financial hardship, seek to amend an order issued by this Court preserving a freeze of assets that had previously been granted through an ex parte temporary restraining order. Defendant Jose Antonio Duclaud Gonzalez de Castilla requests a reduction in the amount frozen in his U.S. account from $1 million to $300,000 to allow him to pay counsel fees and living expenses. Defendant Banrise Ltd. BVI and its beneficial owner, non-party witness Ignacio Guerrero, move for permission to withdraw approximately $1 million of the approximately $3.7 million currently frozen in Guerrero's Banrise brokerage account in order to pay legal expenses, as well as to pursue a real estate investment project in which he is the principal investor.

### Parties

Plaintiff Securities and Exchange Commission ("SEC") is a governmental agency charged with the task of ensuring compliance with federal securities laws.

Defendant Jose Antonio Duclaud Gonzalez de Castilla ("J.Duclaud") is a Mexican citizen and resident who practices law.

He is the sole partner of the law firm of Duclaud Abogados in Cancun, Mexico, and is the brother of defendant Alejandro Duclaud Gonzalez de Castilla ("A.Duclaud").

Non-party witness Ignacio Guerrero ("Guerrero") is the former Executive Director of Banco Internacionale ("BITAL"), one of the largest banks in Mexico. He is also the beneficial owner of defendant Banrise Limited BVI ("Banrise"), an entity formed under the laws of Ireland in the mid–1990's, and reorganized under the laws of the British Virgin Islands in the summer of 1999.

### Prior Proceedings

This motion arises out of an action by the SEC alleging that defendant A. Duclaud received and passed to various friends and relatives in Mexico inside information pertaining to a January 2000 tender offer for CompUSA, Inc. ("CompUSA") that collectively yielded them millions of dollars. The factual and procedural background is set forth more fully in a prior opinion, *S.E.C. v. Gonzalez de Castilla*, 145 F.Supp.2d 402 (S.D.N.Y.2001), familiarity with which is assumed.

On May 10, 2001, this Court granted the SEC an ex parte Temporary Restraining Order freezing the assets in brokerage accounts held by the individual defendants. Shortly thereafter, the SEC issued a press release naming the defendants and setting forth its allegations of insider trading and the amounts of money they earned from the CompUSA trades. On June 27, 2001, this Court issued an opinion that (1) denied the SEC's motion for a preliminary injunction restraining defendants from committing future violations of the securities laws and (2) granted in part the SEC's motion to continue the asset freeze. *S.E.C. v. Gonzalez de Castilla*, 145 F.Supp.2d 402 (S.D.N.Y.2001). As a result, approximately $1 million of J. Duclaud's assets and $3.7 million of Guerre-

ro's assets remained frozen as security for a potential judgment against them.

J. Duclaud and Guerrero now seek to modify the freeze orders for reasons of financial hardship.

### The Modification is Justified only for Attorneys Fees and Related Expenses

■ It is well settled that this Court has authority to freeze personal assets temporarily and the corollary authority to release frozen personal assets, or lower the amount frozen. *See S.E.C. v. Unifund SAL*, 917 F.2d 98 (2d Cir.1990); *S.E.C. v. American Bd. Of Trade, Inc.*, 830 F.2d 431, 438 (2d Cir.1987), *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir.1972). While the primary purpose of freezing assets is to facilitate compensation of defrauded investors in the event a violation is established at trial, "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *Manor Nursing Centers*, 458 F.2d at 1105.

In its May 10 order, this Court weighed these factors and determined that the freeze was justified given that "(1) the SEC has raised an inference of insider trading; and (2) the fact that the defendants live abroad and use off-shore accounts raises a concern that they may transfer their funds beyond the Court's jurisdiction and dissipate the assets available for any eventual award." *Gonzalez de Castilla*, 145 F.Supp.2d at 420–21 (citations omitted). These same concerns apply in reconsidering the scope of the freeze.

■ J. Duclaud asks the Court to release assets frozen in his Caribbean Legal Trust account to allow him to pay both legal and personal expenses. In support of his request, J. Duclaud argues that counsel fees and related litigation expenses

have posed a severe financial burden, and that the publicity resulting from this action has indirectly affected him such that he has incurred significant additional expenses, such as those associated with the hiring of a security company to protect his family (at a cost of $3,825.13 as of the time of this motion). J. Duclaud states that he has been living solely from the approximately $11,635 left in his Banamex bank account, which is barely enough to cover his monthly living expenses, estimated at $9,410.

However, J. Duclaud has voluntarily waived a $15,000 per month salary from his law firm. He alleges that his reason for doing so is to avoid depleting the firm's assets, but no account is given with respect to the extent of the firm's assets or income. No statement of income or assets aside from the Banamex account has been set forth. The SEC has pointed out that J. Duclaud's monthly budget includes $1,800 for a nanny, housekeeper, handyman, and nurse.

■ Guerrero also seeks a reduction in the amount frozen in his Banrise account for reasons of financial hardship, and points to essentially two purposes for the funds. First, like J. Duclaud, he seeks to pay legal fees associated with the SEC's action. Second, he claims that he needs funds from the Banrise account in order to continue his involvement in CIDISA, a real estate investment project in Acapulco to which he has already contributed over $2.2 million. Guerrero argues that he may lose the entire investment if he is unable to secure the money and that the funds invested in a physical asset would later be available should the Court wish to enforce a judgment against him.

The SEC points out that Guerrero, like J. Duclaud, offers no evidence of his overall assets or income, and is a man of substantial means. He was, until his re-cent resignation, Executive Director of BITAL, the fourth largest bank in Mexico, and has admitted in the course of this litigation to substantial investments made prior to the CompUSA trading at issue. The $2.2 million of personal funds invested in the real estate project for which he seeks the instant order is in itself a testament of his wealth. Guerrero has argued that maintaining the investment project is a critical component of his current income, but he has not presented a case of financial hardship or justify why this Court rather than a Mexican investor or banker should be approached for the financing of what he deems a sound investment.

■ Neither J. Duclaud nor Guerrero has demonstrated the need for this Court to amend its order of May 10 for purposes of meeting limited expenses, and Guerrero has not justified such an amendment for purposes of pursuing his CIDISA investment project. However, as indicated in the May 10, 2001 opinion, *Gonzalez de Castilla*, 145 F.Supp.2d at 419, the inference upon which the freeze was granted may not be supported by the necessary quantum of proof, and motions for summary judgment have been made, yet just argued. Both J. Duclaud and Banrise have incurred substantial expenses as a consequence of this action. Under these circumstances, it is appropriate to modify the freeze as to both J. Duclaud and Banrise to permit the payment of legal fees and disbursements. *See SEC v. Schiffer*, No. 97 Civ. 5853, 1998 WL 307375 (S.D.N.Y. June 11, 1998); *S.E.C. v. Int'l Loan Network, Inc.*, 770 F.Supp. 678 (D.D.C.1991).

*Conclusion*

For the forgoing reasons, both parties' motions to release frozen assets are granted for the limited purpose of paying legal expenses. The motions are denied for

**431**

purposes of meeting J. Duclaud and Guerrero's living expenses and financing Guerrero's real estate investment project.

It is so ordered.